**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

KEISHA CARTER,
*Defendant-Appellant.*

No. 98-4912

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JERRY LEE MCRAE,
*Defendant-Appellant.*

No. 98-4913

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

TIVARUS MONTIENTO MCRAE, a/k/a/
Tat-Killer,
*Defendant-Appellant.*

No. 98-4914

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

WILLIE JEROME MCRAE,
*Defendant-Appellant.*

No. 98-4915

UNITED STATES OF AMERICA,

　　　　　　*Plaintiff-Appellee,*

　　　　　　v.

GILBERT DEVON MELVIN, a/k/a
G-Boy,

　　　　　　*Defendant-Appellant.*

No. 98-4916

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(CR-98-37)

Argued: December 3, 1999

Decided: July 30, 2002

Before WIDENER and MURNAGHAN,* Circuit Judges,
and Cynthia H. HALL, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed by published per curiam opinion.

## COUNSEL

**ARGUED:** Richard Brooks Glazier, Fayetteville, North Carolina, for
Appellant Carter; Thomas Peter McNamara, HAFER, MCNAMARA,
CALDWELL, CUTLER & CURTNER, P.A., Raleigh, North Caro-

_____

*Judge Murnaghan heard oral argument in this case but died prior to
the time the decision was filed. The decision is filed by a quorum of the
panel. *See* 28 U.S.C. § 46(d).

lina, for Appellant William McRae; Wayne Buchanan Eads, Raleigh, North Carolina, for Appellant Melvin; Rudolph Alexander Ashton, III, MCCOTTER, MCAFEE & ASHTON, P.L.L.C., New Bern, North Carolina, for Appellant Jerry McRae; Ray Colton Vallery, Fayetteville, North Carolina, for Appellant Tivarus McRae. John Howarth Bennett, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** H. Geral Beaver, Fayetteville, North Carolina, for Appellant Carter. Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

---

## OPINION

PER CURIAM:

### I.

The instant case results from a Task Force investigation into drug trafficking in the area of the Campbell Terrace Public Housing Project in Fayetteville, North Carolina. An indictment naming 20 defendants was returned by the Grand Jury in the United States District Court for the Eastern District of North Carolina on March 3, 1998. In general terms, the indictment alleged (1) a conspiracy to distribute controlled substances, including heroin and crack cocaine, beginning January 1, 1987, and continuing until March 5, 1998, in violation of 18 U.S.C. § 846 (Count 1), and (2) firearms violations during the course and scope of the drug conspiracy, in violation of 18 U.S.C. § 924(c)(1) (Counts 2-38).

Of the 20 defendants named in the indictment, the five appellants in the instant case were joined for trial on September 29, 1998, in the United States District Court for the Eastern District of North Carolina.

From October 6-8, 1998, the jury deliberated and then returned verdicts with the following results:

   (a)   Keisha Carter was convicted of Counts Five and Six, and a mistrial was declared on Count One.

(b)   Jerry McRae was convicted of Count One.

(c)   Tivarus McRae was convicted of Counts One and Twenty-Six and was acquitted of Count Twenty-Seven.

(d)   Willie McRae was convicted of Count One and acquitted of Count Twenty-Nine.

(e)   Gilbert Melvin was convicted of Counts One, Thirty, and Thirty-Three and acquitted of Counts Thirty-One and Thirty-Two.

Keisha Carter was sentenced to 60 months in prison on Count Five and 240 months on Count Six. Jerry McRae was sentenced to life imprisonment. Tivarus McRae was sentenced to 292 months in prison on Count One and 60 months on Count Twenty-Six. Willie McRae was sentenced to life imprisonment. Gilbert Melvin was sentenced to life imprisonment on Count One, 60 months on Count Thirty and 240 months on Count Thirty-Three.

After sentencing, the five defendants filed a timely notice of appeal. The grounds of appeal are numerous, and we address only those specific grounds that merit discussion. We affirm the convictions and sentences.

II.

Defendants Jerry McRae and Gilbert Melvin appeal from the denial of their motion to suppress drug evidence seized from McRae's automobile in September of 1997. McRae and Melvin were arrested after Officer Lane Mooney of the Texas Narcotics Task Force seized cocaine and marijuana from McRae's automobile. In the trial below before the district court, McRae filed a motion to suppress the drug evidence. Melvin also adopted McRae's motion. The district court denied the suppression motions as to both defendants. We review a denial of a motion to suppress *de novo* regarding legal conclusion, with underlying factual determinations reviewed only for clear error. *See United States v. Seidman*, 156 F.3d 542, 547 (4th Cir. 1998).

The district court correctly held that Melvin lacked standing to challenge the search of McRae's automobile. A passenger in a car normally has no legitimate expectation of privacy in an automobile in which he asserts neither a property interest nor a possessory interest and where he disclaims any interest in the seized object. *See Rakes v. Illinois*, 439 U.S. 128, 148-49 (1978). In the instant case, Melvin denied even knowing whose car he was in at the time Officer Mooney pulled the car over and disclaimed any interest in the car's contents. Accordingly, Melvin lacks standing to challenge the search, and the district court properly denied his motion to suppress the drug evidence.

The district court was also correct when it denied McRae's motion to suppress. The seizure occurred when Officer Mooney pulled McRae over for speeding. Officer Mooney testified that when he approached the vehicle, he smelled burnt marijuana in the air. He asked McRae, the driver, for permission to search the car. McRae refused. Officer Mooney then detained the car and retrieved a K-9 drug-sniffing dog from his patrol car for the purpose of conducting a walk-around search of the vehicle. During the walk-around, the dog "alerted" when walking by the driver's side door. Officer Mooney then searched the entire passenger compartment of the vehicle and found a quantity of marijuana on the passenger side of the center console. After discovering the source of the marijuana odor, Mooney then conducted an additional search of the locked trunk of the car, including a search of a closed suitcase in the trunk. Inside the suitcase, Mooney found a kilogram of cocaine.

Warrantless searches "are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *See California v. Acevedo*, 500 U.S. 565, 580 (1991). One such exception is the presence of "exigent circumstances" — an exception presumptively present in the automobile context because of the inherent mobility of the car and the danger that contraband inside the car may disappear if police take the time to obtain a warrant. *See California v. Carney*, 471 U.S. 386, 390-91 (1985). Thus the police may search a car without a warrant as long as there is probable cause to believe the car contains contraband. *Carney*, 471 U.S. at 392.

The police may also conduct warrantless searches of "closed containers" within an automobile, but only if they have probable cause to believe the closed container may contain contraband. *See Acevedo*, 500 U.S. at 580. Whether the warrantless search is of an automobile or of a closed container within an automobile, the limitation is the same: the scope of the search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982). As the Supreme Court held in *Acevedo*, a police officer who has probable cause to believe a paper bag deposited in the trunk of a car contains marijuana may conduct a warrantless search of the trunk and the paper bag; but the officer can not then conduct a warrantless search of the passenger compartment of the car, unless he also has probable cause to believe the passenger compartment contains contraband. *See Acevedo*, 500 U.S. at 580.

In the instant case, Officer Mooney clearly had probable cause to search the passenger compartment of McRae's vehicle without a warrant, based on the burning marijuana he smelled as he approached the car. The question is whether he also had probable cause to search the locked trunk of the car and the closed suitcase inside the trunk (where the cocaine was found).

The government argues that the K-9 drug dog's "alerting" on the driver side of the car gave Mooney probable cause to search the *entire* vehicle: including the trunk and the suitcase. We think that overstates the matter. Because probable cause must be tailored to specific compartments and containers within an automobile, the key is whether the dog "alerted" in the precise vicinity of the trunk. That is a question of fact that the district court resolved in favor of the government, finding that the dog's "alerting" was sufficiently close to the trunk to give Officer Mooney probable cause to believe it contained contraband. We review the district court's findings of fact in a suppression hearing only for clear error. *See Seidman*, 156 F.3d at 547; *see also United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998). And it was not clearly erroneous for the district court to conclude that the dog's "alerting" was prompted by the contents of the trunk.

### III.

Defendant Jerry McRae also appeals from the district court's denial of his motion to suppress drug evidence seized from his car during a

separate warrantless search conducted by Fayetteville, North Carolina police officers.

On March 1, 1997, the police responded to a domestic violence report at McRae's residence. The police put McRae in the back of a police car and went back inside the home to talk to Ms. McRae. The police and Ms. McRae tell two conflicting versions of what happened next.

According to Ms. McRae, she never consented to the search of the vehicle she co-owned with her husband (Jerry McRae). She testified that the police officer took the car keys without her permission after she emptied the contents of her purse onto the kitchen counter.

In contrast, the police officer testified that he asked Ms. McRae if he could search the vehicle. After Ms. McRae asked why, the officer told her he wanted "to make sure [Defendant McRae] doesn't leave anything in the car" that could get her in trouble. Ms. McRae then allegedly responded "okay" and gave the car keys to the officer.

When the government justifies a warrantless search under the "voluntary consent" exception to the 4th Amendment's warrant requirement, the district court's factual determination as to whether consent to the search was actually given is reviewed for clear error. *See United States v. Analla*, 975 F.2d 119, 125 (4th Cir. 1992). The district judge found the officer's account was more reliable than Ms. McRae's and therefore concluded that Ms. McRae had in fact consented to the search of the vehicle. Given that this was a classic "he said, she said" scenario between the officer and Ms. McRae, the district court's decision to give the officer's story greater weight was not "clearly erroneous."

A related, but analytically distinct, issue is whether Ms. McRae's *factual* consent to the search was also "voluntary," *as a matter of law*. The defendant argues that the police coerced Ms. McRae's consent by saying: "We want to search your car to make sure Mr. McRae didn't leave anything in the interior that might get you in trouble." The defendant argues that, by inducing fear in Ms. McRae, the police effectively intimidated her into consenting to the search.

Because the "voluntariness" of a search is a matter of law, it is reviewed de novo. The voluntariness of consent is determined by looking at the totality of the circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). While the police officers' comments, when viewed in isolation, seem rather manipulative, the atmosphere was not coercive when viewed under the totality of the circumstances. Ms. McRae was in her own home when she gave the consent to the search; and though the police officers' comments were obviously designed to induce consent from Ms. McRae, there is no evidence that her "will was overborne." *Id*. Accordingly, we affirm the district court's decision to deny Jerry McRae's motion to suppress the evidence obtained from his car on March 1, 1997.

IV.

While housed in county jail, Michael McEachern encountered Jerry McRae. McEachern later agreed to be a government witness in the prosecution of McRae. McEachern testified that McRae had made statements while in jail evincing a violent attitude towards case agents and others. McRae argued that the testimony should not have been admitted because the government failed to disclose the contents of the testimony to the defense pursuant to Fed. R. Crim. P. 16(a)(1)(A). The district court disagreed and admitted the testimony. McRae now appeals. We review a district court's evidentiary rulings for abuse of discretion. *See United States v. Lancaster*, 78 F.3d 888, 896 (4th Cir. 1996).

McRae's argument is unpersuasive. Federal Rule of Criminal Procedure 16(a)(1)(A) only requires the disclosure of witness statements made "in response to interrogation" by a person acting as a government agent. McEachern's statements about McRae's violent propensities were not made in response to government interrogation, nor was McEachern acting as a government agent when he heard McRae's statements. The district therefore did not abuse its discretion by admitting the testimony over McRae's 16(a)(1)(A) objection.

V.

At the sentencing hearing, Keisha Carter was sentenced to consecutive prison terms of five and twenty years based upon her convictions

for two violations of 18 U.S.C. § 924(c)(1), which makes it a federal crime to use or carry a firearm during or in relation to a drug trafficking crime. *See United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997). Both counts of conviction (Counts 5 and 6) were based on the same predicate drug trafficking crime: namely, the conspiracy offense alleged in Count One. Carter filed a motion pursuant to Federal Rules of Criminal Procedure 29 and 33, seeking a judgment of acquittal or a new trial. Carter argues that she may not be sentenced to multiple terms for two section 924(c) offenses that arose from a single underlying predicate drug trafficking offense. This is a question of law subject to de novo review. *See United States v. Campbell*, 977 F.2d 854 (4th Cir. 1992).

A number of other circuits have adopted the position the defendant now urges on the Fourth Circuit. But we have already reached the issue and decided it in a manner contrary to defendant's position. *See United States v. Camps*, 32 F.3d 102, 106 (4th Cir. 1994), *cert. denied*, 513 U.S. 1158 (1995). Because *Camps* is dispositive, defendant's argument is a non-starter.

## VI.

Carter raises yet another argument relating to her § 924(c) conviction. To recapitulate, § 924(c) criminalizes the use or carrying of a firearm in relation to an underlying, predicate drug trafficking offense. *See Mitchell*, 104 F.3d at 652. Count One of the indictment against Keisha Carter charged her with the predicate drug trafficking offense. Count Five charged her with the § 924(c) firearm offense arising from the underlying drug trafficking offense in Count One. The jury was unable to reach a verdict on Count One, but issued a guilty verdict on Count Five. Carter then filed a motion for judgment of acquittal as to Count Five, arguing that the jury's failure to convict her for the predicate offense in Count One precluded her conviction on Count Five. The district court denied her motion for judgment of acquittal.

The issue is one of first impression for this court. Carter relies on *United States v. Wilson*, 135 F.3d 291, 301 n.7 (4th Cir. 1998), where we stated (in dicta) that "[w]e will not go into detail about the evidence . . . on the 924(c) charge because that charge falls if its predi-

cate offense (conspiracy) falls." From this dicta, the defendant attempts to extrapolate a Fourth Circuit judicial "leaning" in favor of her position.

The government, on the other hand, points to the decisions of several other federal circuits, all of whom have rejected Carter's argument and have held that § 924(c) convictions do not require convictions on the predicate drug trafficking offense as a prerequisite. *See*, *e.g.*, *United States v. Munoz-Fabela*, 896 F.2d 908, 911 (5th Cir. 1990) ("[I]t is only the fact of the offense, and not a conviction, that is needed to establish the required predicate."). Thus, on the government's theory, the drug trafficking predicate for a § 924(c) offense is satisfied as long as a reasonable jury *could* have found the defendant guilty of the drug trafficking offense, even if the actual jury in the case did not render a guilty verdict. The Fifth Circuit, in a post-*Munoz Fabela* case, has even taken the more extreme position that § 924(c) convictions are valid even when the jury *acquits* on the predicate drug trafficking conviction. *See United States v. Ruiz*, 986 F.2d 905, 911 (5th Cir. 1993).

Notwithstanding the dicta in *Wilson*, we adopt the position of the other federal circuits who have considered the question and hold that § 924(c) convictions do not require a conviction on the predicate drug trafficking offense. We find the *Munoz-Fabela* approach more satisfying than the *Ruiz* approach because it requires at least some showing by the government that a reasonable jury *could* have convicted on the predicate drug offense.

Carter's conviction on Count Five passes muster under the *Munoz-Fabela* approach because the jury was unable to reach a verdict for conviction or acquittal on the predicate drug offense. Because there was no affirmative acquittal on Count One, a reasonable jury *could* theoretically have convicted on the predicate drug offense embodied by that Count.

VII.

Jerry McRae challenges the district court's finding that he was responsible for more than 500 but less than 1500 grams of crack cocaine, establishing a sentencing guideline base offense level of 36

pursuant to U.S.S.G. § 2D1.1. After consideration of other factors, McRae's guideline range was set at 360 months to life in prison.

Drug quantity determination is governed by the following standards. The Government must prove by a preponderance of the evidence the amount of controlled substances attributable to a defendant. *See United States v. Johnson*, 54 F.3d 1150, 1156 (4th Cir. 1995). When objecting to drug quantities as set forth in the Presentence Report, the defendant has an affirmative duty to show that the information contained in the report is inaccurate or unreliable. *See United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990). A district court's findings regarding drug quantity are factual in nature and are reviewed only for clear error. *See United States v. Lamarr*, 75 F.3d 964, 972 (4th Cir. 1996).

McRae argues that the drug quantity determination the district court attributed to him was clearly erroneous because of a discrepancy between the trial testimony of Edward Ward (indicating Ward had only received cocaine from McRae on a few occasions) and Ward's statements to agents outside of court (which suggested Ward had purchased around 567 grams of cocaine from McRae).

Because the sentencing judge had only to find the relevant drug quantities by a preponderance of the evidence, the discrepancy in Ward's testimony is not fatal to the government's proof. The self-contradictions in Ward's testimony essentially raise a credibility issue — a question of fact that the district court must resolve at sentencing. The district court's factual findings regarding the relative credibility of Ward's two conflicting stories were not clearly erroneous. Neither were the resulting drug quantity determinations. Accordingly, the district court should be affirmed.

## VIII.

Gilbert Melvin argues that he should not be held accountable during sentencing for drug amounts flowing from offenses of which he was acquitted. The Supreme Court, however, permits sentencing courts to take acquitted conduct into account for purposes of determining drug amount, because of the lower standard of proof that applies at the sentencing stage. *See United States v. Watts*, 519 U.S.

148, 155-56 (1997) ("[A]n acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof."); *see also United States v. Isom*, 886 F.2d 736, 738 (4th Cir. 1989). At sentencing, the government need only prove the "acquitted" drug conduct by a preponderance of the evidence, even though the government failed to convince a jury at trial beyond a reasonable doubt. *See Watts*, 519 U.S. at 156; *see also Johnson*, 54 F.3d at 1156.

The question for the instant case, therefore, is whether it was clearly erroneous for the district court to conclude that Melvin's "acquitted" conduct, while not proven beyond a reasonable doubt at trial, was still proven by a preponderance of the evidence for purposes of sentencing. *See United States v. Lamarr*, 75 F.3d 964, 972 (4th Cir. 1996).

The district court reviewed the entire trial record, the Presentence Report, and the testimony at the sentencing hearing. The court then concluded that the government had proven the drug amounts attributable to Melvin beyond a reasonable doubt. That finding was not clearly erroneous.

## IX.

The district court found that Jerry and Willie McRae were organizational leaders of a criminal enterprise involving five or more participants and consequently assessed them a four level increase in their sentencing guideline offense level pursuant to U.S.S.G. § 3B1.1(a). A district court's findings regarding offense enhancement are factual in nature and are reviewed only for clear error. *See United States v. Withers*, 100 F.3d 1142, 1147 (4th Cir. 1996).

Jerry McRae argues that he was merely a "street dealer" or "middle man" in a much larger drug distribution apparatus engineered by other parties. The level four enhancement was therefore too severe in his view.

However, there was a large quantity of evidence pointing to Jerry McRae's intimate involvement in the distribution of drugs in the

Campbell Terrace projects. The same goes for Willie McRae, who seems to have had an even more active role in the drug trade. The record contains abundant testimony from street dealers in Campbell Terrace who identified Jerry and Willie McRae as the principal suppliers of crack cocaine to the street dealers in the housing project. Also, Anthony McNeill and Anthony Ray testified that more than ten people worked for the McRae brothers.

In view of this evidence, it was not clearly erroneous for the district court to conclude that Jerry and Willie McRae had leadership roles in the drug network and to assess a four level enhancement of their base offense levels.

## X.

Evidence was submitted at the sentencing hearing that Gilbert Melvin shot and killed Gaylord Johnson during a drug-related altercation. When computing the base offense level for Melvin's drug conviction, the court took account of the killing, even though Melvin had not been indicted and convicted of murder. Finding the evidence of the killing nonetheless persuasive, the sentencing court set a base offense level of 43, relying on U.S.S.G. § 2D1.1(d)(1) (death during drug offense) in combination with U.S.S.G. § 2A1.1 (murder). Melvin contends that this was inappropriate, given that (a) he was never tried by a jury and convicted of murder and (b) even if the standard for proving murder is more relaxed in the sentencing context, there was still not enough evidence to prove he actually committed the murder.

In *United States v. Crump*, 120 F.3d 462 (4th Cir. 1997), we held that if a court's findings of fact at sentencing "may rationally be said to be supported by a preponderance of the evidence, they may not be disturbed on appeal." *Id*. at 468. Thus, if the district court concluded by a preponderance of the evidence that Melvin killed Johnson, that factual conclusion withstands appellate review as long as it was not clearly erroneous.

A preponderance of the evidence indeed supported the court's finding that Melvin killed Johnson. At the sentencing hearing, a deputy testified to statements made by Edward Ward, George Gibbs, and Earl Webb, all of whom implicated Melvin in the killing. Thus the district

court's factual conclusion as to Melvin's role in the killing was not clearly erroneous; and because the circumstances of the killing met the requisite legal definition of "murder," the corresponding base offense level of 43 was also appropriate under § 2D1.1(d)(1) and § 2A1.1.

As in *Crump*, Melvin's "real complaint is that he was, in effect, tried and sentenced for first degree murder without the benefit of a jury finding the same beyond a reasonable doubt." *Id.* Nonetheless, "[w]e have previously held that this method of 'real offense' sentencing does not offend the Constitution." *Id.* (citing *United States v. Engleman*, 916 F.2d 182, 184 (4th Cir. 1990)).

## XI.

Gilbert Melvin also received a Criminal History Category Score of VI because the court found him to be an "armed career criminal" under § 4B1.1. One is an armed career criminal if (a) the instant offense of conviction is a felony involving a crime of violence or controlled substance offense and (b) the defendant has at least two prior felony convictions involving a crime of violence or controlled substance offense. *See* U.S.S.G. § 4B1.1.

Melvin's first claim is that, because the instant drug conspiracy began in 1987 and continued until 1999, his felony conviction in 1993 for drug trafficking is not really a "prior" felony for purposes of § 4B1.1, since it postdated the onset of the drug conspiracy. Melvin's argument is unpersuasive. Conspiracy is a continuing offense, constantly renewing itself. Accordingly, the 1993 conviction both preceded and postdated the "beginning" of the conspiracy, because conspiracies, by their very nature, do not have a "beginning" in the conventional sense of the word. Every other federal circuit to consider the issue has come to the same conclusion. *See*, *e.g.*, *United States v. Belton*, 890 F.2d 9, 10-11 (7th Cir. 1989); *accord United States v. Marrone*, 48 F.3d 735, 741 (3rd Cir. 1995).

Second, Melvin claims that his prior assault convictions should not be treated as "violent felonies" under § 4B1.1 because, after he committed the assaults, North Carolina law changed the maximum punishment from two years to 150 days. *United States v. Johnson*, 114

F.3d 435 (4th Cir. 1997), forecloses this argument. There, we held that the sentencing guidelines "do not provide any support for . . . [the] notion that the nature of the conviction at the time of sentencing, rather than at the time of conviction, controls the career offender analysis." *Id.* at 445.

We therefore affirm the district court's decision to sentence Melvin as an armed career criminal under § 4B1.1.

### XII.

In sentencing the defendants the district court did not have the benefit of the Supreme Court's decision in *United States v. Apprendi*, 530 U.S. 466 (2000), nor our subsequent decisions (among others) in *United States v. Angle*, 254 F.3d 514 (4th Cir. 2001) (en banc), *United States v. Promise*, 255 F.3d 150 (4th Cir. 2001) (en banc), *United States v. White*, 238 F.3d 537 (4th Cir. 2001), and *United States v. Cotton*, 261 F.3d 397 (4th Cir. 2001), applying the rule in *Apprendi* to the federal drug statutes. Although, as just explained, we affirm the district court's process and findings in calculating the applicable sentencing guideline ranges for Jerry McRae, Tivarus McRae, Gilbert Melvin, and Willie McRae, we now must address the effect of *Apprendi* and our recent decisions on the sentences actually imposed on those defendants.

We next address whether the defendants' sentences under the federal drug statutes, 21 U.S.C. §§ 841 & 846, are invalid in light of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). During the pendency of this appeal, the Supreme Court held in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Each defendant, except Keisha Carter, argues that his sentence is invalid in light of *Apprendi* because it exceeds the maximum statutory penalty authorized by the jury verdict. Keisha Carter was not convicted on Count I, the conspiracy charge, so she makes no sentencing complaint here related to *Apprendi*.

In *United States v. Promise*, 255 F.3d 150 (4th Cir. 2001) (en banc), we held that drug quantity and type are elements of the offense

under 21 U.S.C. § 846 that must be submitted to a jury and proven beyond a reasonable doubt. See *Promise*, 255 F.3d at 151; see also *United States v. Angle*, 254 F.3d 514 (4th Cir. 2001) (en banc). The en banc court held that the maximum penalty that may be imposed on a particular defendant who possesses with the intent to distribute an identifiable but unspecified quantity of a schedule I or II drug is subject to a term of imprisonment of no more than 20 years. See 21 U.S.C. § 841(b)(1)(C). A sentence exceeding 20 years could be imposed only upon a finding by the jury that the offense involved a required threshold quantity of a schedule I or II controlled substance — for example, 1 kilogram or more of heroin. See 21 U.S.C. § 841(b)(1)(A)(i). Therefore, if the required threshold quantity of drugs was not found by the jury, a judge at sentencing could not impose a penalty in excess of 20 years, and it was error for a court to do so. The failure to instruct the jury on an element of an offense does not, however, constitute error per se; rather, we consider whether the error was harmless or plain. See Federal Rule of Criminal Procedure 52; see also *Neder v. United States*, 527 U.S. 1, 15 (1999) (holding that failure to instruct jury on essential element of offense is not structural error).

Because no defendant raised this argument[1] before the district court, our review is for plain error. See *United States v. Olano*, 507 U.S. 725, 731-32 (1993); Fed. R. Crim. P. 52(b). To reverse for plain error occurring at trial, a reviewing court must: 1) identify an error; 2) that was plain; 3) that affects substantial rights; and 4) that seriously affects the fairness, integrity or public reputation of judicial proceedings. See *United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Brewer*, 1 F.3d 1430, 1434-35 (4th Cir. 1993).

In *United States v. Cotton*, 261 F.3d 397 (4th Cir. 2001), this court answered the question raised in the fourth prong of the *Olano* analysis in the affirmative, holding that the failure to charge drug quantify in the indictment and submit it to the jury seriously affects the fairness,

---

[1]Although Willie McRae and Jerry McRae contested drug quantity at sentencing, they asserted the evidence on which the judge relied was "unreliable," not that the jury should have made that determination. Thus, they did not preserve the objection now made. See *United States v. Pratt*, 239 F.3d 640, 644 (4th Cir. 2001).

integrity or public reputation of judicial proceedings. See *Cotton*, 261 F.3d at 403-04. Our conclusion that we must exercise our discretion to notice these errors, however, was recently reversed by the Supreme Court in *United States v. Cotton*, 525 U.S. at ___, 122 S. Ct. 1781 (2002). The Court held that, "even assuming [defendants'] substantial rights were affected, the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings" where "the evidence . . . was 'overwhelming' and 'essentially' uncontroverted." *Cotton*, 122 S. Ct. at 1786. In the context of a vast drug conspiracy, not unlike this one, the Court concluded that "[t]he real threat then to the 'fairness, integrity, and public reputation of judicial proceedings' would be if respondents, despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial." *Cotton*, 122 S. Ct. at 1787.

The Court's holding under its analysis in *Cotton* was that under an *Olano* plain error analysis we should not notice *Apprendi* sentencing error, where drug quantity was not alleged in the indictment nor proven to the jury, if the evidence is overwhelming and essentially uncontroverted. We thus address the four complaining defendants' sentences in turn and for the reasons that follow we affirm all four sentences.

## A.

Jerry McRae was sentenced to life imprisonment for his conviction under Count One of the indictment, which alleged a violation of 21 U.S.C. § 846.[2] The indictment did not allege drug quantity, and the jury instructions did not state that the jury must find drug quantity. Thus, it was error for the district court to sentence Jerry McRae beyond the 20-year statutory maximum found in 21 U.S.C. § 841(b)(1)(C), and in light of *Apprendi* and our decision in *Promise*, this error was plain. See *United States v. Neal*, 101 F.3d 993, 998 (4th Cir. 1996) (holding that an error is plain "when the 'settled law of the

---

[2]The provisions set out in 21 U.S.C. § 841(b) are incorporated by reference into § 846.

Supreme Court or this circuit' establishes that an error has occurred.
. . .").

   We need not notice this plain error, however, because even assum-
ing Jerry McRae's substantial rights were affected, there is over-
whelming and essentially uncontroverted evidence supporting Jerry
McRae's life sentence.[3] See *Cotton*, 525 U.S. at ___, 122 S. Ct. 1781,
1786 (2002).

   Jerry McRae was a central figure in the drug conspiracy based in
the Campbell Terrace public housing project of Fayetteville, North
Carolina that continued for nearly a decade. There was ample evi-
dence presented at trial and at the sentencing hearing that Jerry
McRae was personally involved with far more than 50 grams of crack
cocaine as well as large amounts of heroin and marijuana. Even if we
accept McRae's assertion that the evidence offered by witness
Edward Ward, attributing 567 grams of cocaine base to him, is
invalid, McRae himself concedes that 56.70 grams of cocaine can be
properly attributed to him based on Ward's testimony. This conces-
sion alone, without considering the additional evidence of drug quan-
tity presented at the trial or at sentencing, provides overwhelming and
essentially uncontroverted evidence that Jerry McRae was account-
able for at least 50 grams of cocaine base. Where such evidence
exists, even in the face of plain error, we need not recognize the error
because the fourth prong of *Olano* is not met. *Cotton*, 525 U.S. at ___,
122 S. Ct. 1781, 1786 (2002).

                                    B.

   Willie McRae was also sentenced to life imprisonment for his con-
viction under Count One of the indictment, which alleged a violation
of 21 U.S.C. § 846. The indictment did not allege drug quantity, and
the jury instructions did not state that the jury must find drug quantity.
Thus, it was also error for the district court to sentence Willie McRae
beyond the 20-year statutory maximum found in 21 U.S.C.
§ 841(b)(1)(C), and in light of *Apprendi* and our decision in *Promise*,
this error was plain. See *Neal*, 101 F.3d at 998.

---

   [3]The penalty for conspiracy to distribute 50 grams or more of cocaine
base is "not less than 10 years or more than life." 21 U.S.C. § 841(b).

Similar to the case of Jerry McRae, we should not notice the error even if Willie McRae's substantial rights were affected, however, because there is also overwhelming and essentially uncontroverted evidence of Willie McRae's responsibility for at least 50 grams of cocaine base. See *Cotton*, 525 U.S. at ___, 122 S. Ct. 1781, 1786 (2002).

Willie McRae challenges the evidence of the drug quantity for which he was held accountable as unreliable. McRae argues that several of the sources relied upon by the court for evidence of drug quantity claimed that they engaged in drug transactions with McRae at times when McRae was actually incarcerated. McRae also asserts that the information on drug quantity obtained from sources who did not testify at trial is inherently unreliable. Even if we assume, without deciding, that McRae is correct and we discount any evidence of drug quantity supported by individuals who either did not testify at trial or who indicated they engaged in drug transactions with McRae from March 15, 1991 until April 15, 1994, a period of McRae's incarceration, we still find overwhelming, essentially uncontroverted evidence that Willie McRae was responsible for over 50 grams of cocaine base.

Anthony McNeil testified that over a period of more than a year, brothers Willie and Jerry McRae had an arrangement where they pooled money with McNeil and another McRae brother, Michael, to purchase drugs obtained by James "Buddy" Johnson in New Jersey. On a typical trip, Johnson returned with one kilogram of cocaine, sometimes in crack cocaine form, for this group. Just one of these repeated purchases of 1,000 grams of crack cocaine satisfied Willie McRae's 50-gram statutory crack cocaine requirement 20 times over. In light of this overwhelming and essentially uncontroverted evidence that Willie McRae is accountable for over 50 grams of cocaine base, we should not notice the *Apprendi* error in his sentencing. *Cotton*, 525 U.S. at ___, 122 S. Ct. 1781, 1786 (2002).

## C.

Tivarus McRae was sentenced to 292 months imprisonment for violating 21 U.S.C. § 846 (Count One) and to 60 months imprisonment for violating 18 U.S.C. § 924 (c)(1) (Count Twenty-Six), the latter to run consecutive to the § 846 sentence. In total, Tivarus McRae

received a 353-month sentence. Again, it was error for the district court to sentence Tivarus McRae beyond the 20-year or 240-month statutory maximum found in 21 U.S.C. § 841(b)(1)(C) for Count One, and in light of *Apprendi* and our decision in *Promise*, this error was plain. See *Neal*, 101 F.3d at 998.

Like Jerry and Willie McRae, we should not recognize the sentencing error, however, because there is overwhelming and essentially uncontroverted evidence that Tivarus McRae was accountable for over 50 grams of cocaine base, which would support a sentence of up to life in prison for Count One. See *Cotton*, 525 U.S. at ___, 122 S. Ct. 1781, 1786 (2002); 21 U.S.C. § 841(b).

George Jarrell Gibbs testified that he, Tivarus McRae, and Gary McCoy made crack cocaine purchases from Larry Dye seven or eight times, and each purchase ranged from one ounce to four and one-half ounces. Gary McCoy testified that Tivarus McRae made purchases from him of between four and one-half ounces and nine ounces of crack cocaine over a period of more than one year. Demario Hopkins testified that he bought quarter-ounce and half-ounce quantities of crack cocaine from Tivarus McRae so frequently that he could not remember the number of times. Edward Ward testified that Tivarus McRae received three-ounce and four-ounce quantities of crack cocaine from Jerry McRae on a regular basis, and that Ward purchased four ounces of crack cocaine from Tivarus McRae every other day during February and March of 1997. Ward also testified that he once saw Tivarus McRae with 18 ounces of crack cocaine. Anthony McNeil testified that Tivarus McRae purchased 14 to 28-ounce qualitites of crack cocaine from him twice weekly over a period of time.[4]

We conclude that there was overwhelming and essentially uncontroverted evidence that Tivarus McRae should be held accountable for well over 50 grams of cocaine base, and thus we decline to notice the error in Tivarus McRae's sentence. See *Cotton*, 525 U.S. at ___, 122 S. Ct. 1781, 1786 (2002).

---

[4]We consider that one ounce is equal to 28.38 grams.

D.

Gilbert Devon Melvin was found guilty of violating 21 U.S.C. § 846 (Count One) and found guilty of two counts of violating 18 U.S.C. § 924(c)(1) (Counts Thirty & Thirty-Three). The district court sentenced him to life imprisonment on the § 846 count and to 60 months and 240 months on the counts under § 924(c)(1), the latter two sentences to run consecutive to the § 846 count, for a total of life plus 25 years. It was error for the district court to sentence Melvin beyond the statutory maximum found in 21 U.S.C. § 841(b)(1)(C) and in light of *Apprendi* and our decision in *Promise*, this error was plain.

Once again, however, because we conclude there is overwhelming and essentially uncontroverted evidence that Melvin is responsible for over 50 grams of cocaine base, we decline to notice the error and we affirm his sentence. See *Cotton*, 525 U.S. at ___, 122 S. Ct. 1781, 1786 (2002).

Evidence showed that Melvin was a drug dealer. Even if we discount evidence of the 425.25 grams of crack cocaine obtained in a robbery in which Melvin allegedly participated, as Melvin asserts we should,[5] there is still ample evidence of cocaine base drug transactions to more than meet the 50-gram threshold to support a sentence of life imprisonment. Melvin bought crack cocaine from Gary McCoy numerous times, sometimes in half-ounce quantities. He also sold half-ounce quantities to Demario Hopkins on several different occasions, and he delivered a half ounce of crack cocaine to Edward Ward. Just four of these half-ounce transactions suffice to place Melvin above the 50-gram threshold. In addition, as is true of all the defendants convicted of the drug conspiracy detailed in Count One,

---

[5]Melvin objected to inclusion of the 425.25 grams of cocaine base counted in his PSR as relevant conduct because the robbery incident served as the substantive basis of Count 32, a firearms charge of which he was acquitted. We hasten to note that conduct proven as evidence of a crime of which a defendant was acquitted may be used as relevant conduct in sentencing if proven by a preponderance of the evidence. See *United States v. Watts*, 519 U.S. 148 (1997); *United States v. Isom*, 886 F.2d 736 (4th Cir. 1989). We exclude consideration of the cocaine base related to the robbery only for the sake of argument.

to the extent their conduct was foreseeable to one another, each defendant is responsible for the drug amounts linked to each of the other conspirators.

## XIII.

We have examined the briefs of the defendants and the record and after oral argument have discussed in the opinion the issues raised in those briefs which are of any consequence at all. Any other issues which may be gleaned from the briefs are without merit.

The convictions and sentences of the defendants are accordingly

*AFFIRMED*.