<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 08-5160**

───────────

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

  v.

MOSES LIRAN DAVIS,

    Defendant - Appellant.

───────────

Appeal from the United States District Court for the Eastern
District of North Carolina, at Wilmington.  James C. Fox, Senior
District Judge.  (5:07-cr-00343-F-1)

───────────

Argued:  May 14, 2010    Decided:  June 15, 2010

───────────

Before MOTZ, KING, and KEENAN, Circuit Judges.

───────────

Affirmed by unpublished per curiam opinion.

───────────

**ARGUED:** William Lee Davis, III, Lumberton, North Carolina, for
Appellant.  William Miller Gilmore, OFFICE OF THE UNITED STATES
ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**
George E. B. Holding, United States Attorney, Anne M. Hayes,
Jennifer P. May-Parker, Assistant United States Attorneys,
OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina,
for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Moses Liran Davis of narcotics and firearms offenses. On appeal, Davis challenges the denial of his motion to suppress, certain evidentiary rulings, the jury instructions, and the sufficiency of the evidence. We affirm.

I.

Davis's arrest resulted from an undercover operation designed to apprehend Christian Angel McDuffie, a suspected drug dealer. Detective Chad Hines of the Wake County Special Response Team ("SRT"), working undercover, had purchased drugs from McDuffie on two prior occasions. McDuffie agreed to meet Detective Hines at a BP gas station in Raleigh, North Carolina, for a third drug transaction on May 19, 2007. The SRT planned to arrest McDuffie after the drugs and money changed hands, and several SRT officers waited in a van parked close to Detective Hines's vehicle, ready to effectuate the "takedown."

The situation grew more dangerous than the officers had anticipated when McDuffie told Detective Hines that, because his regular supplier could not provide him with drugs, he would arrive at the BP station with his "boys." McDuffie told Detective Hines that his friends "didn't deal with white people," but would come to the station with him and wait to collect their share of the proceeds. At 7:22 p.m., McDuffie

called to inform Detective Hines that he was on his way "with his boys." Detective Hines relayed all of this information to the other officers at the scene.

A few minutes later, Detective Hines saw McDuffie's white Acura pull into the BP station parking lot. Detective Wade Allen, who was sitting in the car with Detective Hines, saw another car pull in "almost at the exact same time as the white Acura." Detective Hines communicated to the officers waiting in the SRT van that the suspect had arrived, at which point those officers also saw the second car pull into the parking lot.

Davis, the driver of the second car, backed his car into the space next to the SRT van. (Davis's car faced Detective Hines's vehicle, and the SRT van faced the opposite direction.) From his parking spot, Davis had an unobstructed view of Detective Hines's car, where the drug sale between McDuffie and Detective Hines would take place. Detective Aldolphus McGhee, one of the SRT members waiting in the van, watched Davis for approximately forty-five seconds, during which time Davis did not "make any effort to pump gas or get services from the gas station." Detective McGhee testified that Davis's behavior struck him as unusual: "I found it peculiar and strange that he was sitting in the car. He wasn't going into the store. He wasn't motioning for his wallet or phone. He was just sitting in the car observing the undercover vehicle, looking in that

3

direction." Because of McDuffie's statements about his friends' impending arrival, the close proximity in time of the two cars' entry into the station, Davis's post-parking behavior, McDuffie's statement that his friends would not deal with white people, and Davis's non-white race, the officers suspected that the Davis was one of McDuffie's drug-dealing "boys."

While the SRT officers observed Davis, McDuffie left his vehicle and walked to Detective Hines's car, where he sold Detective Hines $120 worth of powder cocaine. After they completed the sale, some SRT officers emerged from the van to arrest McDuffie, Detective Hines, and Detective Allen. Others went to Davis's car and, with their weapons drawn, "ordered him out of the car and onto the ground." Detective McGhee opened the car door, pulled Davis out, placed him in handcuffs, and then "looked back" at Davis's car, where he saw a "bag of marijuana in the [car] door."

The officers then searched the car. They found marijuana in the driver's side door, a loaded .38 caliber pistol under the driver's side floor mat, cocaine and plastic baggies in a Crown Royal bag in the glove compartment, crack cocaine and a Tanita digital scale in the console, $320 in cash between the driver's seat and the pull-up parking brake, and a 9mm pistol with obliterated serial numbers in the trunk.

4

On November 20, 2007, a grand jury charged Davis with possessing cocaine, cocaine base, and marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (2006); being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924; and using and carrying a firearm during and in relation to a drug trafficking crime, in violation of id. § 924 (c)(1)(A).

Prior to trial, Davis moved to suppress the evidence found in the car, contending that it constituted the fruit of an illegal search. At the suppression hearing, the Government presented testimony from officers at the scene. The Government also moved to admit into evidence the written reports of some officers who did not testify. Davis objected on hearsay grounds.

Without relying on the written reports or admitting them into evidence, the court denied Davis's motion to suppress. Although the court found that the police officers did not have probable cause to arrest Davis at the moment they pulled him out of his car, it concluded that they did have reasonable suspicion to conduct an investigatory stop "in order to assure officer safety in the wake of an executed drug transaction on the scene." The court further reasoned that this investigatory stop permitted the officers to view "a bag of marijuana in plain

sight in the door of Davis's car" and thus provided "probable cause to search the remainder of Davis's car."

At trial, the Government presented testimony describing the McDuffie-Hines transaction, Davis's appearance on the scene, the investigative stop of Davis, and the evidence found in Davis's car. The defense presented no evidence.

The jury found Davis guilty on all counts, and the court sentenced him to 420 months in prison.

Davis timely noted this appeal.

II.

Davis first challenges the district court's order denying his motion to suppress. "[W]e review a district court's factual findings for clear error and its legal determinations de novo." United States v. Perkins, 363 F.3d 317, 320 (4th Cir. 2004). When, as here, the district court has denied a motion to suppress, we "construe the evidence in the light most favorable to the government." Id.

A.

Generally, "a search or seizure without probable cause is unreasonable and, thus, unconstitutional." United States v. Neely, 564 F.3d 346, 349 (4th Cir. 2009) (per curiam). The district court did not find, and the Government does not argue, that the police officers had probable cause to arrest Davis when

they pulled him from his car.  Rather, the Government contends, and the district court found, that the officers conducted a legal investigatory stop pursuant to Terry v. Ohio, 392 U.S. 1 (1968).

Under Terry, "an officer may conduct a brief investigatory stop where the officer has reasonable suspicion [but not probable cause to believe] that criminal activity may be afoot." Perkins, 363 F.3d at 321.  To satisfy the Fourth Amendment, a temporary stop must be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place."  Terry, 392 U.S. at 20.  The police may stop a suspect when they can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  Id. at 21.  Courts must judge those facts "against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?"  Id. at 21-22 (internal quotation marks omitted).

Applying that standard to this case, the officers had reasonable suspicion to stop Davis.  We have explained that "factors which by themselves suggest only innocent conduct may amount to reasonable suspicion when taken together," and "our determination of reasonable suspicion must give due weight to

7

common sense judgments reached by officers in light of their experience and training." Perkins, 363 F.3d at 321. In this case, the police knew that McDuffie planned to bring his "boys" to the drug sale, that those "boys" had provided drugs to McDuffie and did not like white people, that a car had arrived at roughly the same time as McDuffie's car and been positioned in viewing distance of the anticipated drug sale, and that the car was driven by a non-white man who did not buy gas or enter the gas station store. A reasonable police officer would also have understood the close relationship between drugs and guns and the possible danger inherent in a drug transaction. Ultimately, "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." United States v. Arvizu, 534 U.S. 266, 277 (2002). Although Davis might have arrived at the BP gas station without nefarious purpose, the officers reasonably could have suspected otherwise from the circumstances of his arrival and his subsequent actions.

Furthermore, the officers' conduct in detaining Davis did not transform the encounter from a Terry stop (requiring only reasonable suspicion) to a full-scale arrest (requiring probable cause). We have held that a Terry stop becomes a custodial arrest not because of the degree to which officers restrict the suspect's liberty, or the means they employ to do so, but rather

8

as a result of the duration of the stop.  See United States v. Leshuk, 65 F.3d 1105, 1109-10 (4th Cir. 1995).  Terry permits a "brief but complete restriction of liberty" so long as the restriction lasts "no longer than necessary to verify or dispel the officer's suspicion."  Id. at 1109 (emphasis added).  We have explicitly recognized that valid Terry stops may involve "drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force," particularly if the officers "reasonably suspect[] that [the detainee is] armed and dangerous."  United States v. Elston, 479 F.3d 314, 320 (4th Cir. 2007) (internal quotation marks omitted).  The specific circumstances of the detention dictate whether the officers "exceed[ed] the limits of a Terry stop."  Id.

Davis's detention occurred during a dangerous take-down operation in which the arresting officers had to ensure not only their own safety, but also that of two undercover officers, the many patrons at the busy BP station, and the suspected drug dealers.  To minimize the risk of a shoot-out or physical confrontation, they needed to restrain any potentially dangerous persons until they could "verify or dispel" their suspicions about them.  Based on Davis's behavior, the officers could have reasonably suspected him of being McDuffie's drug supplier. They could have reasonably believed that Davis was dangerous,

9

had a gun at the ready (as indeed he did), and was in an ideal location to use that gun to attack them. The officers were entitled to restrain Davis for the brief period necessary to ascertain whether he actually posed a threat.

B.

The SRT officers legally searched Davis's vehicle. The police "may search a car without a warrant as long as there is probable cause to believe the car contains contraband." United States v. Carter, 300 F.3d 415, 422 (4th Cir. 2002) (per curiam). After seeing the marijuana in the door, the police had probable cause to search the passenger compartment. Cf. id.[1] The district court did not err in admitting the evidence the police gathered from their search.

---

[1] The police also searched the trunk of the car and found a gun inside. Although probable cause to search one area of a car does not necessarily extend to the rest of the car, see Carter, 300 F.3d at 422, the district court held -- without explanation -- that the marijuana bag in the car door gave the police probable cause to search the entire car, including the trunk. Davis did not (and does not) specifically challenge the search of the trunk. We need not now decide whether the officers had probable cause to search the trunk. After finding a gun, drugs, a digital scale, and cash in the passenger compartment, clearly the police would have inevitably discovered the gun in the trunk. See United States v. Lynn, 592 F.3d 572, 583 n.7 (4th Cir. 2010) (upholding a trunk search because after the police found drugs and drug paraphernalia in the passenger compartment, they had probable cause to arrest the defendant and perform an inventory search of the vehicle, which would "inevitably have led the officers to discover the [contraband] in the trunk").

10

III.

Davis also argues that the district court erred in several of its evidentiary rulings. We "review the district court's evidentiary rulings for abuse of discretion." United States v. Delfino, 510 F.3d 468, 470 (4th Cir. 2007). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." Id.

A.

Davis contends that the court erred in allowing the Government to introduce as evidence at the suppression hearing written reports prepared by officers who did not testify at the hearing. Petr.'s Br. at 24. However, the district judge did not admit the evidence at the hearing, but rather asked for briefing on whether he should do so. In denying the motion to suppress, the court never mentioned these reports. Instead, the court solely relied on "the evidence offered [and] the testimony received" at the suppression hearing, "and the court's determination as to the credibility of the witnesses." Because nothing in the record indicates that the district court ever admitted the written reports, we cannot conclude that it abused its discretion in doing so.

11

Davis also, albeit briefly, argues that the court abused its discretion in admitting into evidence exhibits regarding the McDuffie-Hines drug transaction. He maintains that this evidence "was not relevant . . . and was prejudicial." Petr.'s Br. at 23. Specifically, Davis objects to Government Exhibits 26 and 26A, which consist of photographs of the cocaine from the McDuffie-Hines drug sale, and the cocaine itself.[2]

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The cocaine from the McDuffie transaction placed in context the discovery of Davis's contraband and connected Davis to drug-

---

[2] Davis also objects to Government exhibits that consist of photographs of the gas station and photographs of the items seized from Davis and his car, as well as the actual items. The district court did not err in admitting this evidence. As we have explained, the police properly conducted the search and seizure, and the court did not err in denying Davis's motion to suppress.

selling activity (thereby negating the argument that he possessed the drugs in his car merely for personal use). Further, the court instructed the jury that the cocaine was "not to be attributed to the possession of Mr. Davis for any reason" and elaborated that "the charge against Mr. Davis doesn't relate to [the McDuffie] charge." We presume that jurors follow the instructions that the court gives them. United States v. Williams, 461 F.3d 441, 451 (4th Cir. 2006). Accordingly, the district court did not abuse its discretion in admitting this evidence.

IV.

Davis additionally contends that the district court erred in refusing to give a jury instruction on the lesser-included offense of simple possession. We review "a district court's decision whether to give a jury instruction for abuse of discretion." United States v. Kennedy, 372 F.3d 686, 698 (4th Cir. 2004).

Davis argues that the relatively small amount of cocaine involved (4.1 grams) produces a fair inference of simple possession and therefore entitles him to a lesser-included offense instruction. Petr.'s Br at 27-28. Our holding in United States v. Wright, 131 F.3d 1111 (4th Cir. 1997) forecloses his argument. In Wright, the police found the

13

defendant with 3.25 grams of crack cocaine. Id. at 1112. The district court denied the defendant's request for a simple possession instruction. Id. We affirmed, explaining that

> [a] defendant is not entitled to a lesser-included offense instruction as a matter of course. In order to receive a lesser-included offense instruction, the proof of the element that differentiates the two offenses must be sufficiently in dispute that the jury could rationally find the defendant guilty of the lesser offense but not guilty of the greater offense. . . . For an element to be placed sufficiently in dispute so as to warrant a lesser-included offense instruction, one of two conditions must be satisfied. Either the testimony on the distinguishing element must be sharply conflicting, or the conclusion as to the lesser offense must be fairly inferable from the evidence presented.

Id. (internal quotation marks and citation omitted).

Like Wright, Davis did not produce "sharply conflicting" testimony as to the "distinguishing element," Davis's intent in possessing the drugs. Rather, he "presented no evidence from which a reasonable jury could find that [his] intent was to possess the cocaine for personal use." Id. No one testified at trial that Davis used drugs or possessed the cocaine "for any purpose other than distribution." Id.

Furthermore, again like Wright, Davis did not demonstrate that possession was fairly inferable from the evidence, given that the amount of cocaine "is simply insufficient alone to require the lesser-included offense instruction requested." Id. at 1113. In Wright, the police found the defendant with

14

cocaine, a razor blade with cocaine residue, and cash; we concluded that "[f]rom none of this evidence could a jury fairly infer that [the defendant] possessed his crack for personal use only." Id. Similarly, the police found Davis with guns, a scale, plastic baggies, cocaine, and cash, and no witness testified that Davis used cocaine. The evidence simply did not provide a fair inference of simple possession.

Thus, the district court did not err in denying the request for a lesser-included offense instruction.


V.

Finally, Davis argues that the district court erred in denying his motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. We consider de novo a district court's denial of a Rule 29 motion. United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005). "In reviewing the sufficiency of the evidence following a conviction, this court views the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government." United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002) (internal quotation marks omitted). If "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," the appellant's sufficiency challenge fails. Id. (internal quotation marks omitted).

15

The district court did not err in denying the Rule 29 motion as to Count One -- possessing cocaine, cocaine base, and marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). "To convict a defendant of possession with the intent to distribute, the government must prove: (1) possession of a narcotic controlled substance; (2) knowledge of the possession; and (3) the intent to distribute." United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2005). The prosecution presented evidence that Davis knowingly possessed drugs, drug trafficking paraphernalia including digital scales and plastic bags with the corners torn off, $320 in $20 bills, and two guns. Petr.'s Br. at 30. Detectives testified as to the connection between those items and narcotic distribution. That evidence provided a sufficient basis for a reasonable juror to find possession with intent to distribute.

The district court also did not err in denying the Rule 29 motion as to Count Two -- being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. Davis stipulated to being a felon, and the prosecution presented evidence that Davis knowingly possessed two firearms.

Nor did the district court err in denying the Rule 29 motion as to Count Three -- using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924 (c)(1)(A). Section 924(c) "requires the government

16

to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime." Lomax, 293 F.3d at 705. Although "whether the firearm served such a purpose is ultimately a factual question," this court has noted several ways a firearm could further or advance drug trafficking, including protection and intimidation. Id. In this case, the SRT officers found one of the guns underneath the driver's side floor mat, at Davis's feet. The jury could reasonably infer that the presence of an illegally possessed and easy-to-reach gun alongside indicia of drug distribution showed that the gun furthered Davis's drug trafficking.

In sum, the district court did not err in denying Davis's Rule 29 motion.

## VI.

For these reasons, we affirm the judgment of the district court.

AFFIRMED

17