UNITED STATES of America

v.

**Gary ELLINGTON, Jr., Defendant.**

**No. CRIM.A. 305CR083.**

United States District Court,
E.D. Virginia,
Richmond Division.

Oct. 19, 2005.

Paul McNulty, Esq., U.S. Atty—ED/VA, AUSA Angela Miller, AUSA Michael Wallace, Richmond, VA, Counsel for the United States.

Charles A. Gavin, Esq., Blackburn, Conte, Schilling & Click PC, Richmond, VA, Counsel for defendant.

## *MEMORANDUM OPINION*

WILLIAMS, Senior District Judge.

This matter is before the Court on the defendant's motion to suppress. For the reasons stated herein, the motion to suppress will be denied.

### I. FACTS

On January 31, 2005, Gary Ellington, Jr. ("Ellington" or "the defendant") was stopped by Richmond City Police Officers Kenneth Wayne Cornett ("Officer Cornett"), Benjamin Toderico ("Officer Toderico"), and Amanda Acuff ("Officer Acuff") on Jefferson Davis Highway in Richmond at approximately 11 p.m. Testimony of Officer Cornett, Transcript of Hearing, October 5, 2005, page 6. Officer Cornett noticed a Lincoln Continental half a car length ahead of his cruiser heading southbound in the lane to the right of the police car. *Id.* Cornett testified that "when the driver of the vehicle applied the brakes the center brake light in the back window did not light up." *Id.* Cornett was driving the police car, Officer Toderico was in the passenger side seat, and Officer Acuff was sitting behind Officer Toderico. *Id.* at 7.

Officer Acuff stated that she noticed a crack in the windshield. Testimony of Officer Acuff, Transcript of Hearing, October 12, 2005, page 6. She also stated that she noticed the non-functioning center brake light. *Id.* at 7. For his part, Officer Toderico did not notice the defective brake light; however he stated that he did observe the crack in the windshield. Testimony of Officer Toderico, Transcript of Hearing, October 5, 2005, pages 48–49.

After observing the allegedly defective brake light and cracked windshield, the officers ran a check of the license plate of the vehicle and determined that it was registered to the defendant. Testimony of Officer Cornett, Transcript of Hearing, October 5, 2005, page 8. Cornett stated he recognized defendant's name from some previous interaction, but he could not, at that moment, remember the particulars. After running a license check, the officers pulled Ellington over. Once he approached Ellington, Cornett remembered his previous encounter with the defendant. At the previous encounter, the defendant had been in possession of "powder cocaine and two firearms." *Id.* at 9. Cornett asked the defendant to step out of the vehicle, the defendant complied, and Cornett then asked if he could pat Ellington down. *Id.* Ellington asked why, and Cornett replied, "The last time we dealt with each other you had guns and I want to make sure you don't have any guns on you." *Id.* at 10. Ellington was not carrying any weapons on his person and after a brief discussion concerning their previous interaction, Cornett asked him to continue the conversation in the police car, with the defendant sitting in the passenger side seat previously occupied by Officer Toderico. *Id.* The defendant asserted that he was placed in handcuffs immediately prior to taking the passenger side seat, Testimony of Gary Ellington, Transcript of Hearing, October

5, 2005, page 59, but the Court does not find the defendant's testimony on this issue to be credible. Defendant's testimony is generally not credible given that he admitted to smoking marijuana earlier that evening, *Id.* at 66, and all three officers testified that the defendant was not handcuffed while he was sitting in the police car. Testimony of Officer Cornett, Transcript of Hearing, October 5, 2005 pages 26–27; Testimony of Officer Toderico, Transcript of Hearing, October 5, 2005, page 45; Testimony of Officer Acuff, Transcript of Hearing, October 12, 2005, pages 8–9. Moreover, the two officers in the car with Ellington, Cornett and Acuff, both testified that when Ellington told them he had gun, they were both startled precisely because he was sitting in the police car without restraints. (It soon became clear, however, that Ellington meant that there was a firearm in his automobile). Testimony of Officer Cornett, Transcript of Hearing, October 5, 2005, page 14.

While Cornett and Acuff spoke with Ellington, Officer Toderico walked around the outside of defendant's car with a flashlight looking for "anything that might stand out that would be a violation." Testimony of Officer Toderico, Transcript of Hearing, October 5, 2005, page 46. Toderico noticed, with the aid of his flashlight, a marijuana seed, resting on a carpeted strip, two to three inches in width, between the seat and the door. *Id.* at 35. After observing the marijuana seed, Toderico returned to the police car and asked the defendant about the marijuana seed. *Id.* Toderico told Ellington to walk over to the car and look at the seed through the window with the aid of the police-issue flashlight. *Id.* at 36. Ellington stated that he could not see anything, so Toderico told him to "go ahead and open the door." *Id.* Ellington leaned in and tried to flick or brush the seed away, at which point Toderico had Ellington step back from the vehicle, so that he could recover the seed.

*Id.* While doing so, Toderico noticed some marijuana flakes and "a little clump of marijuana . . . underneath the seat." *Id.*

After the encounter at his own vehicle with Toderico, the defendant returned to the police car, still unhandcuffed, and Officer Cornett began asking him about the marijuana. Testimony of Officer Cornett, Transcript of Hearing, October 5, 2005, page 13. Ellington responded by stating that the marijuana must have been left there by a previous owner, *Id.*, this despite the fact that Ellington had thoroughly cleaned the car "about an hour beforehand." Testimony of Gary Ellington Jr., Transcript of Hearing, October 5, 2005, page 63. Cornett gave Ellington a look of disbelief, which caused Ellington to admit that the marijuana was his. Testimony of Officer Cornett, Transcript of Hearing, October 5, 2005, page 13. After admitting to his possession of marijuana for personal use, the defendant then began telling Cornett how he felt that his life was threatened and that his family was in danger. *Id.* at 14. Cornett said, "What are you trying to tell me . . . [do] you have a gun on you?" *Id.* Cornett testified that Ellington said, "Yes, I have a gun on me." *Id.* Initially Cornett and Acuff thought Ellington meant that he was armed as he sat unhandcuffed in the car, but shortly thereafter it became clear that he meant there was a firearm in the car. *Id.* Officer Toderico returned to the defendant's car and recovered the gun. *Id.* at 15. In addition, a set of digital scales, used to weigh marijuana, was recovered. *Id.* After the recovery of the marijuana, the gun, and the digital scales, the defendant was read his Miranda rights. *Id.* at 16.

## II.  ANALYSIS

### A.  The Fourth Amendment Reasonableness Inquiry

▇▇▇ The Fourth Amendment protects persons from unreasonable searches and

seizures. *See* U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness ...." *United States v. Knights,* 534 U.S. 112, 118, 122 S.Ct. 587, 591, 151 L.Ed.2d 497 (2001). Warrantless searches are *"per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *See California v. Acevedo,* 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991). In the context of an ordinary traffic stop, which is considered a limited seizure within the meaning of the Fourth and Fourteenth Amendments, *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), one such exception is the existence of probable cause or reasonable suspicion, based on specific and articulable facts, of unlawful conduct. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A traffic offense is a specific and articulable fact justifying a traffic stop. *United States v. Hassan El,* 5 F.3d 726, 729 (4th Cir.1993).

■ In conducting a traffic stop, the police must "have probable cause to believe that a traffic violation has occurred," *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), or "a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (internal quotation marks omitted). The officers' subjective intentions and motivations are irrelevant to the Fourth Amendment analysis. *See Whren,* 517 U.S. at 813, 116 S.Ct. 1769; *Hassan El,* 5 F.3d at 730. As long as there was an objective basis for the stop, based on probable cause or reasonable suspicion, the dictates of the Fourth Amendment have been satisfied. Therefore, the fact that an officer may be factually mistaken as to the existence of a traffic offense does not render the stop illegal; rather, "the only question is whether his mistake of fact was reasonable." *United States v. Chanthasouxat,* 342 F.3d 1271, 1276 (11th Cir.2003) (citing *United States v. Cashman,* 216 F.3d 582 (7th Cir.2000)). "An officer's mistake of fact may provide the objective basis for reasonable suspicion or probable cause under the Fourth Amendment because of the intensely fact-sensitive nature of reasonable suspicion and probable cause determinations." *Chanthasouxat,* 342 F.3d at 1276.

In *Cashman,* a Wisconsin statute specified that no vehicle's windshield be "excessively cracked or damaged." 216 F.3d at 586 (quoting Wis. Admin. Code § Trans. 305.34(3) (1997) (internal quotations omitted)). The Wisconsin code made clear what constituted an excessive crack or damage, and the defendant maintained that his windshield did not meet that definition. *Cashman,* 216 F.3d at 586–87. The Seventh Circuit held that whether the windshield was actually excessively cracked or damaged was not the issue; the "pertinent question instead is whether it was reasonable for [the officer] to *believe* that [a traffic offense had been committed]." *Id.* (citing *United States v. Smith,* 80 F.3d 215, 219 (7th Cir.1996)). The Seventh Circuit found that "so long as the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense, the officer has probable cause to stop the driver." *Cashman,* 216 F.3d at 586.

■ On the other hand, a mistake of law cannot provide the necessary objective basis for reasonable suspicion or probable cause. *Chanthasouxat,* 342 F.3d at 1279; *see also United States v. Lopez–Soto,* 205 F.3d 1101 (9th Cir.2000), and *United States v. Lopez–Valdez,* 178 F.3d 282 (5th Cir.1999). Furthermore, unlike a reason-

able mistake of fact, a reasonable mistake of law does not cure the constitutional defect. "There is no good faith exception to the exclusionary rule for police who do not act in accordance with governing law. To create such an exception ... would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey." *Chanthasouxat*, 342 F.3d at 1280 (citing *Lopez–Soto*, 205 F.3d at 1106); *see also United States v. Derrell Williams*, 85 Fed.Appx. 341, 347 (4th Cir. 2004) (quoting *Chanthasouxat*).

In *Chanthasouxat*, Office Carter of the Birmingham, Alabama Police Department stopped a van driven by Chanthasouxat for failure to have an inside rear-view mirror. 342 F.3d at 1272. In support of the traffic stop, the government cited to the Alabama Code, which provided that "[e]very motor vehicle, operated singly or when towing any other vehicle, shall be equipped with a mirror so located as to reflect to the driver a view of the highway for a distance of at least 200 feet to the rear of such motor vehicle." ALA. CODE § 32–5–214 (2002). Additionally, the government cited to Rule 20 of the Birmingham City Magistrate's fine schedule, which provided for a twenty-dollar fine for "improper or no rear-view mirror." However, the Birmingham City Code merely required that a driver be able to "obtain a view of the street to the rear by looking backward from the driver's position" or have "a mirror so located as to reflect to the driver a view of the streets for a distance of at least 200 feet of the rear of the vehicle." § 10–11–5. The Eleventh Circuit found that there was "no requirement that the mirror be inside the vehicle ... [and] the magistrate's fee schedule for 'improper or no rear-view mirror' also says nothing about requiring an *inside* rear-view mirror." *Chanthasouxat*, 342 F.3d at 1278. The court agreed

with the government that "Officer Carter's mistake of law was reasonable." However, "a mistake of law *cannot* provide reasonable suspicion or probable cause to justify a traffic stop." *Id.* at 1279; *see also Williams*, 85 Fed.Appx. 341 (citing *Chanthasouxat*).

### 1. The Non-functioning Center Brake Light

In this case, there are two possible justifications for the traffic stop—the non-functioning brake light and the cracked windshield. Officers Cornett and Acuff testified that they noticed the non-functioning center brake light. Officer Toderico testified that he did not observe the non-functioning brake light. However, defendant's father, who took custody of the car after the incident, testified that all the lights were in working order, and that an inspection had been undertaken, at defense counsel's request, that verified that fact. Testimony of Gary Ellington, Sr., Transcript of Hearing, October 5, 2005, page 74. Furthermore, since taking custody of the car, defendant's father has never been told that he was driving with a defective light, nor has he ever been pulled over for driving the Lincoln Continental with a defective brake light. *Id.* at page 74. In addition, Benjamin Cash, chief inspector and supervisor at Ron's Auto, testified that when he inspected Ellington's car he found "all the rear tail lights to be in proper working order." Testimony of Benjamin Cash, Transcript of Hearing, October 5, 2005, page 83. Finally, not only was no traffic citation issued to the defendant by any of the three officers present at the traffic stop, the officers also did not impound the car. Statement of U.S. Attorney Angela Miller, Transcript of Hearing, October 12, 2005, page 51.

█ The government has failed to show that the center brake light was non-func-

tioning. However, given that the standard is not whether the brake light was actually non-functioning, but rather whether the officers made a reasonable mistake in believing that the center brake light was non-functioning, the Court must ask whether the government has demonstrated by a preponderance of the evidence that the officer's mistake was reasonable. The Court finds that the government has failed to surmount that burden. The Court is persuaded that the brake light was functioning properly, and, more importantly, that the officers were unreasonable in believing otherwise.

### 2. The Crack in the Windshield

Having found that the brake light was functioning and that the officers did not act reasonably in believing otherwise, the Court now turns to the second possible justification for the traffic stop—the crack in the windshield. The first officer to notice the crack in the windshield was Acuff. *See* Testimony of Officer Cornett, Transcript of Hearing, October 5, 2005, page 7, and Testimony of Officer Acuff, Transcript of Hearing, October 12, 2005, page 6. On cross-examination, Officer Acuff was asked, "[W]hen you saw up in to the windshield, what caused you to believe that it was defective?" Acuff responded, "When it was obstructing his view, that is what I believed. And anything that is over, I believe, one and a half inch, one and half inches on the windshield is defective." Testimony of Officer Acuff, Transcript of Hearing, October 12, 2005, page 15. In fact, Virginia law does not so state. Virginia law provides: "It shall be unlawful for any person to use or have as equipment on a motor vehicle operated on a highway any device or equipment mentioned in § 46.2–1002 which is defective or in an unsafe condition."va. Code. Ann. § 46.2–1003. Virginia Code § 46.2–1002 requires that safety glass in a motor vehicle

being operated on a highway be of an approved type.

■ The Court conducted an inspection of the defendant's car on October 12, 2005. The windshield on defendant's car is between four and five feet in length. A crack of one and a half inches would take up less than 3.2% of the surface of a forty-eight inch windshield and only 2.5% of a sixty inch windshield. As a matter of law, the Court finds that a crack that length would not run afoul of the Virginia Code— it could not be considered to create a defective nor an unsafe windshield. To the extent that Officer Acuff's mistake of law provided the basis for the traffic stop, the stop was illegal because a mistake of law, reasonable or otherwise, cannot justify a seizure.

■ However, Officer Acuff's mistake of law is not the end of Court's inquiry. Each officer testified that he or she saw the crack in the windshield prior to pulling the car over. *See, e.g.,* Testimony of Officer Toderico, Transcript of Hearing, October 5, 2005, page 49. While it is an open question as to whether the crack in the windshield was actually defective, it is clear that each officer believed that it was possible that the crack in the windshield rendered the windshield defective. It is not necessary for the Court to decide whether the windshield was actually defective or created an unsafe condition. The only question is whether it was reasonable for the officer to believe that it was possibly defective. Each officer saw the crack, and although each gave a somewhat different account of the crack's size, ranging from eight inches to three feet, each officer testified to the crack's existence. Even if the crack were only eight inches, that size would support a reasonable belief that the crack could have created a defective or unsafe windshield. Therefore, based on

the officers' collective belief that the crack, at a minimum, could have signaled a defective or unsafe condition, the Court finds that the traffic stop was reasonable under the Fourth Amendment.

B. The Plain View Doctrine and the Discovery of the Marijuana and the Gun

██ Having determined that the traffic stop was legal, the next question is whether the evidence of the marijuana and the firearm should be excluded. The Court finds that the marijuana is admissible under the plain view doctrine. "Under that doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). All three criteria are met here—the Court simply notes that the third requirement, as the Supreme Court has explained, is "simply a corollary of the familiar principle ... that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' " *Horton v. California,* 496 U.S. 128, 137 n. 7, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *United States v. Legg,* 18 F.3d 240, 244 (4th Cir.1994). Exigent circumstances are "presumptively present in the automobile context because of the inherent mobility of the car and the danger that contraband inside the car may disappear if police take the time to obtain a warrant." *United States v. Carter,* 300 F.3d 415 (4th Cir.2002).

██ As soon as Officer Toderico observed the marijuana seed in plain view in the defendant's car, the officers had probable cause to believe that Ellington was committing a narcotics violation. The scope of the initial traffic stop thus ex-panded into a possible narcotics violation investigation. The search of the car thereafter was permissible because exigent circumstances are presumptively present in the automobile context. *Id.* Whether Ellington's statements concerning the gun were voluntarily made or not, and the Court finds that they were, the gun would also be admissible under the inevitable discovery doctrine, which requires that the subsequent search was lawful. *See Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Here, the subsequent search was lawful, because the police already had probable cause to believe, in fact the police knew, that there were narcotics in the defendant's car. Thus, evidence of the marijuana and the gun are admissible.

## III. CONCLUSION

The Court concludes that the seizure of defendant's marijuana and firearm was lawful under the Fourth Amendment. Accordingly, defendant's motion to suppress will be denied, and the evidence seized from the defendant and his vehicle on January 31, 2005 will be admitted.

An appropriate Order shall issue.

## ORDER

This matter is before the Court on the defendant's motion to suppress. For the reasons stated in the accompanying Memorandum Opinion, the motion to suppress is DENIED

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.