IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. WELCH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
DEANDRA C. WELCH, APPELLANT.

Filed November 19, 2013.    No. A-12-951.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, John C. Jorgensen, and Ariel Johnson, Senior Certified Law Student, for appellant.

Jon Bruning, Attorney General, and Melissa R. Vincent for appellee.

MOORE, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Deandra C. Welch appeals from the decision of the district court for Lancaster County that, after a jury trial, convicted him of possession of a firearm by a prohibited person and driving under suspension.

## II. FACTUAL BACKGROUND

On October 27, 2011, Investigators Timothy Cronin and Jeffrey Sorensen, both of whom were assigned to the narcotics unit of the Lincoln Police Department (LPD), were working the second shift from 2:30 to 10:30 p.m. Both were in plain clothes and traveling in an unmarked vehicle. Shortly after 7 p.m., Cronin and Sorensen were at the intersection of 27th and Holdrege Streets when Cronin observed Welch drive by in his vehicle. Cronin recognized Welch from previous contacts and knew his driver's license was suspended. Cronin followed Welch while Sorensen used a laptop computer to access the Nebraska Criminal Justice Information System

- 1 -

database, which receives real-time information directly from the Department of Motor Vehicles, to confirm that Welch's license was suspended.

Welch pulled his vehicle into the parking lot of a convenience store located on the southwest corner of 33d and Holdrege Streets. Cronin was not sure whether Welch planned to stop, so he circled the block. Upon returning, Cronin and Sorensen pulled into a parking lot across the street from the convenience store and observed Welch's vehicle parked next to a gas pump. As Welch began fueling his vehicle, Cronin drove toward the convenience store's parking lot and Welch looked directly at him. Cronin testified that Welch was familiar with him and had seen him in the same vehicle on several prior occasions. After pumping only 27 cents worth of gas, Welch walked back to his vehicle "at a faster pace" and entered the driver's side door. Cronin and Sorensen temporarily lost sight of Welch and were concerned that he might be hiding contraband or retrieving a weapon.

Cronin pulled his vehicle directly behind Welch's vehicle. Welch exited the driver's side door, locked it, and shut it. Cronin and Sorensen exited their vehicle and approached Welch. Once they determined that Welch's hands were empty, Cronin advised Welch that he was under arrest for driving under suspension and attempted to place him in handcuffs. According to Cronin and Sorensen, Welch became argumentative and resisted their efforts to place him in handcuffs. During this time, Cronin removed the keys from Welch's hand and placed them on top of Welch's vehicle. A marked patrol unit arrived, and Welch was placed in the backseat of that patrol car.

Once Welch was secured in the patrol car, Cronin walked around the outside of Welch's vehicle. While looking through the windows of the vehicle, Cronin observed a single marijuana seed on the front passenger seat. After seeing the marijuana seed, Cronin used Welch's keys to unlock the vehicle and search for additional contraband. Cronin observed a semiautomatic pistol underneath the driver's seat. Cronin later determined that the firearm contained 14 rounds of ammunition, 13 in the magazine and 1 in the chamber.

## III. PROCEDURAL BACKGROUND

The State charged Welch with (1) possession of a firearm by a prohibited person; (2) carrying a concealed weapon, first offense; (3) resisting arrest, first offense; and (4) driving under suspension.

Welch filed a motion to suppress any items seized by the police during the warrantless search of his vehicle. A suppression hearing was held on May 15, 2012. Cronin and Sorensen testified to the facts set forth above. Cronin also testified that he has worked for the LPD for 12½ years and has been a narcotics investigator for more than 2 years. He received 6 months of training at the LPD academy. He also participated in a 2-week Drug Enforcement Agency training program. Cronin testified that he can identify drugs by their smell and appearance. He testified that he identifies marijuana on a daily basis. Cronin testified that he is able to identify marijuana seeds and has seen them "hundreds" of times. Cronin testified that a marijuana seed is a "very distinctive looking seed." He described it as "like a little pod," "very shiny" texture, "not a solid color," "yellow and green all mixed in, kind of like a taupe-type color," with a "light-colored line running through the middle of it." Cronin testified that marijuana seeds contain THC and that THC is what makes marijuana a controlled substance.

Cronin testified that he used a hand-held light to look through the windows of Welch's vehicle. Cronin testified that he saw a "single marijuana seed in the crevice of the passenger portion of the front bench seat." He said it appeared to be a marijuana seed by its size, shape, and color. After seeing the alleged marijuana seed, Cronin used Welch's keys to unlock the vehicle to search for more contraband. During the search, Cronin found the firearm under the driver's seat. Cronin collected the firearm and the seed for evidentiary purposes. A subsequent laboratory analysis of the alleged marijuana seed was inconclusive. The report stated that the item "was of an insufficient quantity for controlled substances identification."

Sorensen testified that the decision was made to tow Welch's vehicle because Welch had a history of driving under suspension. It is not clear from Sorensen's testimony when, during the course of events, the decision was made to tow Welch's vehicle. Sorensen testified that when a vehicle is to be towed, it is the LPD policy to do an inventory search of items within a vehicle. Sorensen testified that the purpose of an inventory search is to inventory high value items prior to the vehicle being towed and/or turned over to the tow lot. Sorensen testified that an inventory search includes a search of the passenger compartment, the glovebox, the center console, and any unlocked or open containers. Both Cronin and Sorensen testified that the area where the firearm was found would have been searched during an inventory search.

After the suppression hearing, the district court judge who heard the motion had to disqualify herself and the case was reassigned to a new judge. The new district court judge consulted with counsel, and after the court offered to conduct a new suppression hearing, it was agreed by all parties that a bill of exceptions would be prepared from the hearing previously held on May 15, 2012, and the matter submitted on the record. After reviewing the bill of exceptions, the district court found that the search and seizure were justified under the plain view and inventory search exceptions to the warrant requirement. Therefore, the district court overruled Welch's motion to suppress.

Trial was held on August 14 and 15, 2012. At the trial, Welch renewed his objections relating to the motion to suppress, but his objections were overruled. Cronin and Sorensen testified at trial, and their testimony has been set forth above.

The State also sought to offer into evidence exhibit 26, a compact disc (CD) containing audio recordings of four telephone calls made by Welch while he was being detained in a holding cell at the Lancaster County jail following his arrest on October 27, 2011. Initially, the State had informed Welch that it did not intend to use the recorded calls at trial. However, shortly before trial, the State changed its mind and informed Welch that it did intend to use the calls. Welch requested a hearing pursuant to Neb. Rev. Stat. § 27-104 (Reissue 2008) so that the court could determine the admissibility of the recorded calls. A hearing on Welch's motion in limine regarding § 27-104 admissibility was held during the course of the trial, but outside of the jury's presence. The testimony from the hearing will be set forth as necessary in our analysis. The district court overruled Welch's motion in limine and found that the four recorded calls contained in exhibit 26 were admissible at trial. The calls contained admissions by Welch regarding knowledge of the firearm in the vehicle.

At trial, the parties stipulated that (1) on October 27, 2011, Welch did not have a valid driver's license, because it had been previously revoked, and (2) Welch had previously been convicted of a felony.

At the end of the trial, the district court granted the State's motion to dismiss the charge of carrying a concealed weapon. The jury found Welch guilty of possession of a firearm by a prohibited person and driving under suspension. The jury found Welch not guilty of resisting arrest. The trial court accepted the jury's verdict. Welch was later sentenced to 6 to 10 years' imprisonment for possession of a firearm by a prohibited person and 1 to 3 months' imprisonment for driving under suspension. The sentences were ordered to be served concurrently. Welch was given 73 days' credit for time served. Welch has timely appealed his convictions and sentences to this court.

## IV. ASSIGNMENTS OF ERROR

Welch assigns that (1) the district court improperly admitted exhibit 26, a copy of four recorded telephone calls, (2) the district court erred in overruling his motion to suppress the evidence obtained from a warrantless search of his vehicle, (3) the remaining, properly admitted evidence was insufficient to support his conviction for possession of a firearm by a prohibited person, and (4) the district court imposed excessive sentences.

## V. STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id*.

A court must determine whether there is sufficient foundation evidence for the admission of physical evidence on a case-by-case basis. *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012). Because authentication rulings are necessarily fact specific, a trial court has discretion to determine whether evidence has been properly authenticated. *Id*. An appellate court reviews a trial court's ruling on authentication for abuse of discretion. *Id*.

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Nolan, supra*. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. *Id*. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *Id*.

When reviewing a criminal conviction for sufficiency of the evidence to sustain a conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McGee*, 282 Neb. 387, 803 N.W.2d 497 (2011). And whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *Id*.

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011).

## VI. ANALYSIS

### 1. EXHIBIT 26: RECORDED TELEPHONE CALLS

Welch argues that the district court erred in admitting exhibit 26 without proper foundation. As stated previously, exhibit 26 is a CD containing audio recordings of four telephone calls made by Welch while he was being detained in a holding cell at the Lancaster County jail following his arrest on October 27, 2011. Welch argues that the recorded calls were not properly authenticated and contained inadmissible hearsay. Welch also argues that the admission of the recorded calls into evidence violated his rights to confrontation and cross-examination under the 6th and 14th amendments.

Welch originally made a motion in limine seeking to exclude the CD containing the four calls made by him while he was being detained at the jail. The motion was overruled. During the trial, Welch objected to the receipt of the calls, marked as exhibit 26, on the grounds of insufficient authentication, hearsay, and confrontation. He asked for, and was granted, a continuing objection. Thus, Welch's objections were preserved for appellate review. See *State v. Almasaudi*, 282 Neb. 162, 802 N.W.2d 110 (2011).

### (a) Authentication and Confrontation

Welch argues that the recorded calls were not properly authenticated and violated his rights to confrontation and cross-examination. Neb. Rev. Stat. § 27-901(1) (Reissue 2008) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Section 27-901 does not impose a high hurdle for authentication or identification. *State v. Taylor*, 282 Neb. 297, 803 N.W.2d 746 (2011). A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity. *Id.* If the proponent's showing is sufficient to support a finding that the evidence is what it purports to be, the proponent has satisfied the requirement of § 27-901(1).

Section 27-901(2) provides examples of some methods of authentication or identification that conform with the requirements of § 27-901(1). Those examples include:

> (a) Testimony that a matter is what it is claimed to be;
>
> . . . .
>
> (e) Identification of a voice, whether heard first-hand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker;
>
> . . . .
>
> (i) Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result[.]

§ 27-901(2).

In the instant case, the State offered into evidence exhibit 26, a CD containing recorded telephone calls made by Welch while he was being detained at the Lancaster County jail. As foundation for the exhibit, the State presented testimony from several witnesses. Angie Koziol testified that she is the business manager, not the records manager, for the Lancaster County

- 5 -

Corrections Department. Koziol testified that Legacy Inmate Communication (Legacy) is the inmate telephone provider at the jail. Legacy is located in California. Koziol testified that she is familiar with the Legacy recording system. The Legacy recording system automatically records all outgoing inmate calls; there is no human intervention in the recording of the calls. Legacy assigns a resource ID number to each call made. The resource ID number identifies the date and time the call was made, as well as the telephone number dialed. At the beginning of each call, there is a prerecorded message which (1) notifies the receiving party that the call is from an inmate at the Lancaster County jail; (2) prompts the inmate to state his or her name; (3) gives the receiving party the option to accept, deny, or block the call; and (4) warns that the call may be recorded and is subject to monitoring. Calls are stored on a hard drive at Legacy. Recorded calls can be retrieved at a later date through Legacy's Web site using a login and password. Calls are accessible on Legacy's Web site for 3 to 6 months, after which time the calls are archived and may be accessed upon request. Recorded calls may be downloaded onto a CD. If the recording system encounters a problem, a "trouble ticket" is generated and posted on Legacy's Web site.

Koziol also testified that the jail keeps an inmate movement log of each inmate's movements while in the jail (e.g., arrest times, booking times, when and where they are moved within the jail, when they leave for court, when they are released from custody, et cetera). The movement logs are done on the Nebraska Criminal Justice Information System, and the records are generated at or near the time of the events. Koziol testified that the records are made and kept in the normal course of business. The public does not have access to the Nebraska Criminal Justice Information System. The inmate movement log shows Welch was in a holding room from 8:24 p.m. on October 27, 2011, until 12:48 a.m. on October 28. Koziol testified that the holding room is located in the booking area of the jail. Inmates in the booking area have access to a telephone on a rolling cart. There are telephone jacks in between the holding cells, and two holding cells may share an assigned jack. The telephone is plugged into the jack, and the handset goes through a "pass-through." The cart is rolled close to the holding cell door so that the inmate can dial. All calls placed from the booking area are recorded by Legacy. Koziol testified that only one person is placed in each holding cell and that therefore, a call can be narrowed down to two individuals on any given date and time.

Koziol testified that she requested reinstatement of all calls made from the jail on October 27 and 28, 2011. Koziol searched for calls made from the booking area of the jail during the time Welch was being held there. She testified that the four calls in exhibit 26 were made from the booking area of the jail while Welch was being held there. She further testified that the Legacy system was working on October 27 and 28. Koziol testified that it is not possible to alter or delete calls made by inmates. Koziol's testimony satisfied § 27-901(2)(i) by describing the process and system used in creating recordings, the inability of recordings to be made if the system is down, and the inability to modify recordings.

Sorensen testified that he is familiar with the Legacy system and has been using the system for 3 years. Sorensen testified that he has access to Legacy's Web site. Sorensen testified that on October 28, 2011, he located three calls placed from the Lancaster County jail to a telephone number belonging to Welch's mother on the evening of October 27. Sorensen also located one call placed from the Lancaster County jail on October 27 to a telephone number belonging to a woman who has children with Welch. Sorensen downloaded the four calls onto a

CD, exhibit 26, and testified that he did not alter, modify, or delete the calls. Sorensen noted that at the beginning of each call, the inmate identified himself as "Dray." Sorensen testified that "Dray" is a known alias for Welch. In addition, Sorensen testified that he is familiar with Welch's voice, having heard him speak in person both on and after October 27. Sorensen testified that the inmate speaking on the recorded calls was Welch. Sorensen testified that the calls on exhibit 26 are true and accurate recordings of the four calls he listened to on October 28, although he noted that one call has since been partially redacted. Sorensen testified that the redacted portion was at the "tail end" of the call and contained Welch's discussion about an unrelated case. Sorensen's testimony satisfied § 27-901(2)(a), (e), and (i).

Cronin testified that one of Welch's nicknames is "Dray." Cronin testified that he is familiar with Welch's voice, having heard him speak before, on, and after October 27, 2011. Cronin testified that the inmate speaking on the recorded calls was Welch. Cronin testified that he had previously listened to the four calls on Legacy's Web site and that the calls on exhibit 26 are the same as the calls on the Web site, except for a 4-minute redaction on one call. Cronin's testimony satisfied § 27-901(2)(e).

Welch argues that in order to properly authenticate the recorded calls, the State needed to have someone from Legacy testify as to its system and whether or not the recordings could have been altered from their original state (e.g., in the 24 hours between the time the call was originally recorded onto Legacy's hard drive on October 27, 2011, and when Cronin and Sorensen listened to and downloaded the calls from Legacy's Web site on October 28). Welch argues that the State's failure to call a witness from Legacy denied him the opportunity to confront and cross-examine his accusers.

In overruling Welch's motion in limine, the district court stated:

> I'm going to overrule the motion in limine. And just for the record, I'll say this. I think as I've listened to the testimony this morning, there's no indication to me of any mark of unreliability as to the recording. To the extent that there's a third party involved with essentially maintaining records, again, while I appreciate fully the issue of and concern with tampering, I don't find that the process that they used or the people that the State called to admit those records were of a concern enough to sustain a motion in limine here.
>
> I think the recordings have been properly authenticated in the sense that somebody from the State has testified as to how the records were kept, how they were maintained. It's true that the records were redacted, but I don't find any evidence that, except for the State's redacting the records and clipping off four minutes of one of the recordings, I don't find any evidence whatsoever that the foundation for the recordings was not properly laid.
>
> Could others testify as to that foundation? Yes. Could somebody have [sic] from Legacy have come and testified? Maybe they could have. But I don't -- I don't require that. I don't think that every time a jail recording gets made that the company that keeps the database is required to come testify but for maybe a showing that there was some sort of indicator of nonreliabiliy. But in this case there's nothing of that. The officer testified, I find him credible. So as far as the -- as far as a business record, as far as the protection of the CD or the four calls, I find that meets the foundational requirement.

The district court did not abuse its discretion in finding that the recorded telephone calls contained in exhibit 26 were reliable. Other than the 4-minute redaction at the end of one call, there is no evidence that the calls were altered in any way. During cross-examination of Sorensen, Welch's counsel noted that if the files were redacted, then they are capable of being altered. We disagree. We have listened to the audio recordings of the calls. The redaction in the one call did not occur in the middle of the call; rather, the redaction occurred at the end of the call when the recording was cut off 13 minutes 40 seconds into the call. Cutting off the tail end of the recording is not the same as altering the call. We note that during an earlier discussion between counsel and the court, the State mentioned that "last night" it had to redact one of the calls because it contained a reference by Welch to an unrelated case. This comports to Sorensen's testimony that the redacted portion of the call contained Welch's discussion about an unrelated case. Furthermore, Welch does not argue that he was not provided with an unredacted version of the call as part of discovery. As stated previously, the State is not required to rule out all possibilities inconsistent with authenticity. *State v. Taylor*, 282 Neb. 297, 803 N.W.2d 746 (2011). If the proponent's showing is sufficient to support a finding that the evidence is what it purports to be, the proponent has satisfied the requirement of § 27-901(1). *State v. Taylor, supra.* Welch could have called his own witness from Legacy to refute the reliability of the recorded calls, but he did not call any such witness. Welch also had opportunities to confront and cross-examine the State's witnesses who provided the foundation for the recordings. Based on the testimony of Koziol, Sorensen, and Cronin, the district court did not abuse its discretion in finding that the recorded calls in exhibit 26 were properly authenticated and admissible at trial.

To the extent that Welch argues that the receipt of the recordings themselves violated his right to confront his accusers, this argument is without merit because the recordings were not testimonial in nature. See *State v. Leibel*, 286 Neb. 725, ___ N.W.2d ___ (2013) (where testimonial statements are at issue, Confrontation Clause demands that such out-of-court hearsay statements be admitted at trial only if declarant is unavailable and there has been prior opportunity for cross-examination; testimonial statements include formal statements by accuser to government officers). Nontestimonial statements are not subject to Confrontation Clause protection or analysis. *State v. Sorensen*, 283 Neb. 932, 814 N.W.2d 371 (2012). Welch's recorded jailhouse conversations were not "testimonial." See *United States v. Thurman*, 915 F. Supp. 2d 836, 855 (W.D. Ky. 2012) (holding similar conversations, even though incriminating, do not implicate confrontation clause concerns because conversations were "far more in the nature of the type of casual, offhand remarks made between friends that routinely are held to be nontestimonial in nature"). Because the recordings of Welch's conversations were not testimonial in nature, the receipt of such does not violate Welch's right to confront his accusers.

(b) Hearsay

Welch argues that exhibit 26 contained inadmissible hearsay and thus should have been excluded at trial. Any statements in exhibit 26 made by Welch are not hearsay because he is a party to the litigation. See Neb. Rev. Stat. § 27-801(4)(b) (Reissue 2008) (statement is not hearsay if statement is offered against party and is his own statement). Furthermore, although not specifically stated by the State at trial, it appears that the statements made by the recipients of Welch's telephone calls were not offered for their truth, but merely to provide context for

Welch's statements. Accordingly, the recipients' statements were not hearsay. See § 27-801(3) (hearsay is statement, other than one made by declarant while testifying at trial or hearing, offered in evidence to prove truth of matter asserted). See, also, *United States v. Tolliver*, 454 F.3d 660 (7th Cir. 2006) (statements providing context for other admissible statements are not hearsay because they are not offered for their truth); *United States v. Wills*, 346 F.3d 476, 489-90 (4th Cir. 2003) (defendant's own statements on recorded telephone conversations were admissible as admissions by a party-opponent, and defendant's brother's statements on those recordings were also admissible as they were reasonably required to place defendant's responses into context; accordingly, brother's statements were properly admitted to make defendant's statements, so far as they constituted incriminating admissions, "intelligible to the jury and recognizable as admissions"). The district court did not abuse its discretion in receiving exhibit 26 into evidence at trial.

Even if the statements made by the recipients of Welch's telephone calls constituted inadmissible hearsay, the admission of such statements into evidence was harmless error. Harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury's verdict adversely to a defendant's substantial right. *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011). In the recorded calls, Welch said the following: "The gun was stolen," "I knew it was loaded," "I had one in the chamber," "13 and 1 in the chamber," and "[m]ust have meant for me to get off the street . . . cause I was plannin[g] on burnin[g] somebody." Sorensen testified that "to burn" is a common slang term for shooting somebody. As stated previously, any statements made by Welch are not hearsay because he is a party to the litigation, and his own incriminating statements were enough to support the jury's verdict.

### 2. MOTION TO SUPPRESS

Welch asserts that the district court erred in overruling his motion to suppress the evidence obtained from the warrantless search of his vehicle. There is no dispute in this case that the investigators did not have a warrant to search Welch's vehicle. Therefore, this case must be analyzed as a warrantless search and seizure case.

Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions, which must be strictly confined by their justifications. *State v. Borst*, 281 Neb. 217, 795 N.W.2d 262 (2010). Warrantless search exceptions include (1) searches undertaken with consent or with probable cause, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest. *Id*. In the case of a search and seizure conducted without a warrant, the State has the burden of showing the applicability of one or more of the exceptions to the warrant requirement. *Id*. The district court in this case found that the warrantless search and seizure was justified under the plain view and inventory search exceptions to the warrant requirement.

Welch does not dispute that the seed was in plain view. Instead, he argues that the seed did not provide Cronin with probable cause to search the vehicle because (1) Cronin did not have probable cause to believe the seed was a marijuana seed and (2) even if it was a marijuana seed,

a single marijuana seed could not support a reasonable belief that additional contraband would be found.

Probable cause escapes precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. *State v. Smith*, 279 Neb. 918, 782 N.W.2d 913 (2010). Probable cause is a flexible, commonsense standard. *Id*. It merely requires that the facts available to the officer would warrant a person of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. *Id*. We determine probable cause by an objective standard of reasonableness, given the known facts and circumstances. *Id*.

It is clear from Cronin's testimony that he had reason to believe that the seed he observed in Welch's vehicle was a marijuana seed. Cronin has worked for the LPD for 12½ years and has been a narcotics investigator for more than 2 years. As detailed previously, he had learned to identify drugs, including marijuana, by their smell and appearance. Cronin testified that the seed he saw in Welch's vehicle appeared to be a marijuana seed by its size, shape, and color. Given Cronin's training and experience, he had reason to believe that the seed he observed was a marijuana seed.

Welch argues that a single marijuana seed could not support a reasonable belief that additional contraband would be found. The Nebraska Supreme Court has said: "Having found a quantity of illicit drugs in one part of the automobile does not sensibly suggest the probability that no more such substance is present." *State v. Watts*, 209 Neb. 371, 374, 307 N.W.2d 816, 819 (1981). See, also, *State v. Ellington*, 396 F. Supp. 2d 695 (E.D. Vir. 2005) (officers had probable cause to search defendant's vehicle after observing single marijuana seed resting on carpeted strip between seat and door); *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996). Under Nebraska law, marijuana is a controlled substance, see Neb. Rev. Stat. § 28-405(c)(10) (Supp. 2011), and seeds are included in the definition of marijuana, see Neb. Rev. Stat. § 28-401(13) (Cum. Supp. 2012). Thus, Cronin's observation of a marijuana seed, an illicit drug, does support a reasonable belief that additional contraband would be found in the vehicle.

Other relevant information supports a reasonable belief that additional contraband would be found in the vehicle. Cronin testified that he had arrested Welch in the past for offenses involving marijuana. Additionally, Welch's behaviors immediately prior to contact with Cronin and Sorensen were suspicious and concerning. Cronin testified that when Welch saw Cronin and Sorensen driving toward him, Welch stopped pumping gas, walked back to his vehicle "at a faster pace," and entered the driver's side door. Cronin and Sorensen temporarily lost sight of Welch when Welch seemed to "duck down" below the driver's seat. After a few seconds, Welch exited the driver's side door, locked it, and shut it. The investigators were concerned that Welch was trying to either conceal or retrieve some item or firearm. Based on the totality of the circumstances, Cronin had probable cause to search the vehicle.

In addition to probable cause, we find that the firearm would have inevitably been discovered during an inventory search of the vehicle. See *State v. Ball*, 271 Neb. 140, 710 N.W.2d 592 (2006) (courts have recognized that evidence which would have been discovered in course of lawful inventory search can be admissible under inevitable discovery doctrine). Inventory searches are permissible after an arrest. *State v. Filkin*, 242 Neb. 276, 494 N.W.2d 544

(1993). However, such searches must be performed in accordance with standard operating procedures. *Id*. There is no constitutional requirement that inventory policies be established in writing. *Id.* But, the State bears the burden of proving that a law enforcement agency's search was made pursuant to a standardized criteria or established routine. *Id*.

In the instant case, Welch was arrested for driving under suspension. Because Welch had a history of driving under suspension, law enforcement made the decision to tow Welch's vehicle. Sorensen testified that when a vehicle is to be towed, the LPD policy requires an inventory search of items within a vehicle. Although no written policy was offered or received into evidence, Sorensen testified as to the purpose (to inventory high value items and document those items prior to vehicle's being turned over to tow lot) and scope (passenger compartment, glovebox, center console, and any unlocked or open containers) of an inventory search of a vehicle. Both Cronin and Sorensen testified that the area where the firearm was found would have been searched during an inventory search. Based on the testimony, we find that the firearm would have inevitably been discovered during an inventory search of the vehicle.

### 3. SUFFICIENCY OF EVIDENCE

Welch asserts that there was insufficient evidence to support his conviction for possession of a firearm by a prohibited person. When reviewing a criminal conviction for sufficiency of the evidence to sustain a conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McGee*, 282 Neb. 387, 803 N.W.2d 497 (2011). And whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *Id*.

Pursuant to Neb. Rev. Stat. § 28-1206(1) (Cum. Supp. 2012), any person who possesses a firearm and who has previously been convicted of a felony commits the offense of possession of a deadly weapon by a prohibited person. Welch stipulated at trial that he had previously been convicted of a felony. The fact of possession may be proved by circumstantial evidence. *State v. Long*, 8 Neb. App. 353, 594 N.W.2d 310 (1999). Additionally, a defendant's control or dominion over premises at which narcotics or other contraband is located may establish the defendant's constructive possession of the contraband. *Id*.

A firearm was found underneath the driver's seat of a vehicle driven by Welch, and Welch was the sole occupant of that vehicle. In telephone calls made after his arrest, Welch admitted that he knew the firearm was inside the vehicle and that he had been planning to use the firearm. Viewing the evidence in the light most favorable to the prosecution, the jury could have found the essential elements of the crime beyond a reasonable doubt. See *State v. McGee, supra*. Accordingly, there was sufficient evidence to support Welch's conviction for possession of a firearm by a prohibited person.

### 4. EXCESSIVE SENTENCES

Welch asserts that the district court imposed excessive sentences. Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience,

and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011).

Welch was 20 years old at the time of the crime and 21 at the time of sentencing. He completed the 11th grade and was unemployed. Welch's criminal history dates back to 2004, when he was a juvenile. He has adult convictions for, among other things, criminal mischief, obstructing a peace officer, possession of marijuana less than 1 ounce, theft by unlawful taking (a Class IV felony), and assault. As part of the presentence investigation for his current convictions, the probation office conducted an assessment, which indicated that Welch was at a "very high" risk to reoffend.

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Williams, supra*. And it is the minimum portion of an indeterminate sentence which measures its severity. *State v. Nevels*, 235 Neb. 39, 453 N.W.2d 579 (1990). Welch was convicted of possession of a firearm by a prohibited person under § 28-1206(3)(b), a Class ID felony, and sentenced to 6 to 10 years' imprisonment. The statutory sentencing range for a Class ID felony is 3 to 50 years' imprisonment. Welch was also convicted of driving under suspension under Neb. Rev. Stat. § 60-4,108(2) (Cum. Supp. 2012), a Class III misdemeanor, and sentenced to 1 to 3 months' imprisonment. The statutory sentencing range for a Class III misdemeanor is up to 3 months' imprisonment, a $100 fine, or both imprisonment and a fine. Welch's sentences were to be served concurrently. His combined sentence is in the low range of the permissible sentencing range. Having considered the relevant factors in this case, we find that the combined sentence is not excessive or an abuse of discretion.

## VII. CONCLUSION

For the reasons stated above, Welch's convictions and sentences are affirmed.

AFFIRMED.